**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LEMKO CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 2:25-cv-305-JRG |
| AT&T INC., AT&T ENTERPRISES LLC, AT&T COMMUNICATIONS LLC, AT&T MOBILITY LLC, AT&T MOBILITY LLC II, and AT&T SERVICES, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**DEFENDANTS' OPPOSED MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF TEXAS UNDER THE FIRST-TO-FILE RULE**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    Lemko's First-Filed and Second-Filed Cases ........................................ 2

        1.    Lemko First Sued Microsoft in the Northern District of Texas On Substantially Overlapping Patents and Accused Products. ......................... 2

        2.    Lemko Later Sued AT&T in the Eastern District of Texas on Substantially Overlapping Patents and Accused Products. ................................................. 3

    B.    The Asserted Patents in this Case Substantially Overlap with the Asserted Patents in the First-Filed Case ............................................................................. 4

    C.    The Accused Technology and Products in this Case Substantially Overlap with the Accused Technology and Products in the First-Filed Case. ................................... 6

    D.    The Parties in this Case Substantially Overlap with the Parties in the First-Filed Case .............................................................................................................. 8

III.  LEGAL STANDARD ......................................................................................... 9

IV.   ARGUMENT .................................................................................................... 10

    A.    Lemko's Suit in the Northern District of Texas is the First-Filed Case ............... 10

    B.    There is Substantial Overlap Between This Case and the First-Filed Case. ......... 10

        1.    There is substantial overlap in the asserted patents in both cases............. 10

        2.    There is substantial overlap in the accused products in both cases .......... 13

        3.    There is substantial overlap in the parties in both cases ........................... 14

        4.    There is substantial overlap in anticipated discovery in both cases.......... 15

V.    CONCLUSION................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AmberWave Sys. Corp. v. Intel Corp.*,
  No. 2:05-CV-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005) ...........................................10

*Cadle Co. v. Whataburger of Alice*,
  174 F.3d 599 (5th Cir. 1999) ..................................................................................................9

*Cameron Int'l Corp. v. Nitro Fluids LLC*,
  2020 WL 3259809 (W.D. Tex. June 16, 2020), *vacated on other grounds*, *In
  re Nitro Fluids*, 978 F.3d 1308 .............................................................................................15

*DynaEnergetics Eur. GMBH v. Hunting Titan, Inc.*,
  2020 WL 3259807 (W.D. Tex. June 16, 2020) ......................................................................12

*E-Z-EM, Inc. v. Mallinckrodt, Inc.*,
  2010 WL 1378820 (E.D. Tex. Feb. 26, 2010) ........................................................................12

*Hydro-Quebec v. A123 Sys., Inc.*,
  No. 3:11-cv-1217-B, 2012 WL 13026630 (N.D. Tex. Mar. 16, 2012) ....................................12

*Le-Vel Brands, LLC v. R&D Glob., LLC*,
  No. 4:20-cv-420-SDJ, 2021 WL 963738 (E.D. Tex. Mar. 15, 2021) .........................................9

*Lemko Corp. v. Microsoft*,
  NDTX Case No. 3:22-cv-363-L-BT .........................................................................................3

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*,
  No. 2:22-cv-00168-JRG, 2022 WL 17417972 (E.D. Tex. Dec. 5, 2022) ...........................9, 15

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
  No. 2:13-CV-00349-JRG, 2014 WL 12618095 (E.D. Tex. Mar. 10, 2014) .................2, 11, 13

*RPost Holdings, Inc. v. Yesware, Inc.*,
  No. 2:13-cv-953-JRG, 2014 WL 12712410 (E.D. Tex. Sep. 4, 2014) ...................................10

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ........................................................................................9, 10, 14

*Scorpcast, LLC v. MG Freesites, Ltd.*,
  2021 WL 7286024 (W.D. Tex. June 21, 2021) ......................................................................11

*SIPCO, LLC v. Emerson Elec. Co.*,
  2016 WL 7743496 (E.D. Tex. July 1, 2016) ..........................................................................13

*In re Taasera Licensing LLC, Pat. Litig.*,
    No. 2:22-CV-00303-JRG, 2023 WL 2716548 (E.D. Tex. Mar. 29, 2023) ............................14

*Victaulic Co. v. Romar Supply, Inc.*,
    No. 3:13-CV-02760-K, 2013 WL 6027745 (N.D. Tex. Nov. 14, 2013) .....................10, 14, 15

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA,
    AFL-CIO*,
    751 F.2d 721 (5th Cir. 1985) ...................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................3

## I.    INTRODUCTION

The AT&T Defendants respectfully move this Court to transfer this case under the first-to-file rule to the Northern District of Texas, where Plaintiff Lemko Corporation ("Lemko") first filed a closely related case involving substantially overlapping patents, parties, technology and accused products against Microsoft Corporation and Affirmed Networks, Inc. (collectively, "Microsoft") pending as Case No. 3:22-cv-363-L-BT (the "first-filed case").

This case presents a straightforward application of the first-to-file rule. In this case, Lemko alleges infringement of seven patents directed to Lemko's "distributed mobile architecture." In the first-filed case, Lemko alleges infringement of eight patents directed to Lemko's "distributed mobile architecture." All fifteen patents share the same sole named inventor—Shaowei Pan. Four asserted patents here are related to five asserted patents in the first-filed case. Those patents share, respectively, the same specifications, drawings, prior art and priority dates and many identical or nearly identical claim terms. The claims of the patents are so patentably indistinct that Lemko had to file terminal disclaimers to overcome double-patenting rejections between three of the asserted patents in this case over three of the asserted patents in the first-filed case. Lemko makes identical allegations regarding marking of its allegedly patent practicing product—the Lemko Node1—for all fifteen patents.

Lemko also accuses substantially overlapping products and technology in both cases. In the first-filed case, Lemko alleges infringement by Microsoft's 5G mobile core software running on Azure Stack Edge servers allegedly used in the Affirmed Private Network Service. In this case, Lemko alleges infringement by Microsoft's 5G mobile core software running on Azure Stack Edge servers allegedly used in AT&T Private 5G Edge private network. In both cases, Lemko points to substantially overlapping 3GPP core network functions allegedly included in Microsoft's mobile

core software as meeting nearly all claim limitations in all fifteen patents. And there is substantial overlap between the parties. Lemko is the plaintiff in both cases and alleges that the AT&T defendants are in privity with Microsoft with respect to the products accused of infringement in this case.

The facts here are closely analogous to *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 2:13-CV-00349-JRG, 2014 WL 12618095, at *1 (E.D. Tex. Mar. 10, 2014), in which this Court transferred a second-filed case under the first-to-file rule. Lemko seemingly filed this case to circumvent a stay entered in NDTX while the court considered Microsoft's motion to dismiss. But the NDTX court ruled on that motion shortly after this case was filed and, on June 2, 2025, entered a Patent Scheduling Order setting a Markman hearing for January 13, 2026, a dispositive motion deadline of September 3, 2026, with the case trial ready by late fall 2026. As in *Bosch*, this case involves substantially overlapping issues of claim construction, infringement, prior art, invalidity and discovery, warranting transfer under the first-to-file rule. Principles of comity and judicial economy strongly favor transfer of this case to the Northern District of Texas, Lemko's originally chosen venue in the first-filed case.

## II.    BACKGROUND

### A.    Lemko's First-Filed and Second-Filed Cases

#### 1.    Lemko First Sued Microsoft in the Northern District of Texas On Substantially Overlapping Patents and Accused Products.

On February 14, 2022, Lemko sued Microsoft in the Northern District of Texas, alleging that "Affirmed Mobile Core," 4G and 5G software running on Azure Stack Edge servers, and allegedly included in the Affirmed Private Network Service (APNS), infringe eight patents directed to Lemko's "distributed mobile architecture" (DMA) wireless communications system: U.S. Patent Nos. 7,548,763 ('763 Patent); 7,653,414 ('414 Patent); 7,855,988 ('988 Patent);

8,107,409 ('409 Patent); 8,688,111 ('111 Patent); 9,191,980 ('980 Patent); 9,332,478 ('478 Patent); and 9,755,931 ('931 Patent). *Lemko Corp. v. Microsoft et al.,* NDTX Case No. 3:22-cv-363-L-BT, ECF No. 1; Exs. 5–12.

Discovery in NDTX was stayed while the court considered Microsoft's Rule 12(b)(6) motions to dismiss (*id.* ECF No. 41), twice dismissing Lemko's complaints for failure to state a claim (*id.* ECF Nos. 50, 76 (adopted ECF No. 79)). On September 6, 2024, Lemko filed its Second Amended Complaint (*id.* ECF No. 80 (attached as Ex. 1)). Microsoft again moved to dismiss. *Id.* ECF No. 85. On April 10, 2025, the court recommended granting Microsoft's motion as to Lemko's claims of contributory infringement but denying as to Lemko's direct infringement claims, which the court adopted without objection on June 4, 2025 (*id.*, ECF No. 90 (adopted ECF No. 94)).

On June 2, 2025, the NDTX court entered a patent scheduling order setting dates for infringement and invalidity contentions, a Markman hearing for January 13, 2026, fact and expert discovery deadlines, dispositive and Daubert motion deadlines for September 3, 2026, and a trial date to be set thereafter at the court's discretion (*id.*, ECF No. 93, attached as Ex. 2).

### 2. Lemko Later Sued AT&T in the Eastern District of Texas on Substantially Overlapping Patents and Accused Products.

On March 17, 2025, while Microsoft's motion to dismiss in NDTX was still pending, Lemko sued AT&T here, claiming that "AT&T Private 5G Edge" private network—which Lemko baldly alleges "employs servers running the [Microsoft] Azure Private 5G Core…including [Microsoft] Azure Stack Edge servers"—infringes seven patents directed to Lemko's "distributed mobile architecture" (DMA) wireless communications system: U.S. Patent Nos. 7,840,230 ('230 Patent), 7,979,066 ('066 Patent), 8,224,322 ('322 Patent), 8,310,990 ('990 Patent), 8,340,667 ('667 Patent), 8,359,029 ('029 Patent), and 9,198,020 ('020 Patent). Compl., ECF No. 1 at ¶¶ 50–56; ECF Nos. 1-1 through 1-7.

Lemko's complaint attaches the current AT&T Private 5G Edge webpage, which merely states the product "is being developed" and invites interested parties "to be considered in our preview phase." Ex. 3 (ECF No. 1-10).  It does *not* reflect that AT&T has ever actually made, used, sold, or offered the product for sale, nor does it reflect that AT&T Private 5G Edge "employs" Microsoft's Azure Private 5G Core.  *Id.*  For that allegation, Lemko cites Microsoft's webpage for Azure Private 5G Core, which similarly does not mention AT&T or its products.  ECF No. 1 at ¶ 50; ECF No. 1-13.  Nonetheless, for its infringement allegations against AT&T, Lemko points to *Microsoft* documentation regarding Microsoft's Azure Private 5G Core software running on Azure Stack Edge servers as meeting nearly every limitation of the asserted patents. ECF No. 1 ¶¶ 80–88, 113–117, 141–150, 173–178, 201–210, 233–236 (alleging Microsoft's software includes the HLR, UPF, UDR, UDM, HSS, VLR, VLRG, AUSF, MSC, BSC, AMF, SMF, AAA, CLR, IMSI, MDN, SUPI, DMAG network functionalities identified as accused instrumentalities); *see also* ECF Nos. 1-13, 1-14, 1-25, 1-44, 1-45 (Microsoft documentation). On June 9, 2025, the AT&T defendants answered, denying infringement and denying sufficient information or knowledge to respond to Lemko's allegations related to Microsoft's 5G mobile core software and Azure Stack Edge servers. ECF No. 27 at ¶¶ 51, 53, 55, 82–88.

**B.    The Asserted Patents in this Case Substantially Overlap with the Asserted Patents in the First-Filed Case**

The seven patents at issue here largely overlap with the eight patents at issue in the first-filed case. All fifteen patents have the same sole inventor, Shaowei Pan, and all are directed to the same subject matter—Lemko's distributed mobile architecture (DMA) wireless communications system. Twelve of the fifteen patents share identical or nearly identical titles. *See* Ex. 4 (Summary Table 1). Four patents asserted here are related to five patents asserted in the first-filed case. *See* Ex. 4 (Summary Table 2). The claims of the patents here are so patentably indistinct from those in

the first-filed case that the Patent Office issued obviousness-type double patenting rejections for three patents asserted here over three patents asserted in the first-filed case, which Lemko addressed by filing terminal disclaimers. *See* Exs. 13–15, 4 (Summary Table 3). Notably, Lemko's '667 Patent's terminal disclaimer over its '414 Patent is between unrelated patents, yet the Patent Office still found the subject matter not patentably distinct. *Id.*

There is also a significant overlap in at least a dozen identical or nearly identical claim terms between the two cases, many of which will require claim construction. *See e.g.*, Ex. 4 (Summary Table 4). For example, the terms "distributed mobile architecture" and "distributed mobile architecture gateway" appear in dozens of claims across thirteen of the fifteen asserted patents. *Id.* The terms "home location register," "visitor location register," and "community location register" appear in dozens of claims across ten patents. *Id.* And the terms "mobile switching center," "base station controller," and "authentication, authorization, and accounting" module appear in claims of eight patents across both cases. *Id.*

The patents in both cases also have substantially overlapping specifications and figures. The nine related patents (*id.*, at Table 2) share identical specifications and figures, and the other six patents also substantially overlap.  For instance, the '322 Patent's specification at issue here is nearly identical to the specification in the unrelated '414 Patent in the first-filed case, including the same Background sections, Figures 1–25, and descriptions of those figures in the Detailed Description sections. *Compare* Ex. 6 *with* ECF No. 1-3. Additionally, nine of the fifteen patents include the same figure depicting Lemko's DMA system (Ex. 4, Summary Table 5), along with many other identical figures among the fifteen patents.

 Lemko's complaints in both cases also include nearly identical descriptions of the allegedly non-conventional aspects of the respective patents.   *See* Ex. 4 (Summary Table 6); *E.g.*

*Compare* ECF No. 1 ¶ 21, *with* Ex. 1 ¶ 12 (*e.g.* "The regional call centers relied on stacks of custom hardware to manage and route calls for an entire region. The cell towers had no functionality for managing and routing calls, since that capacity was located in the mobile switching station."); *id.*; *e.g. Compare* ECF No. 1 ¶ 37, *with* Ex. 1 ¶ 38 ("Other claims of the Asserted Patents describe further specific and nonconventional functions and networking requirements on DMA servers and DMAGs.").  And Lemko's allegations about marking its patent-practicing products are identical in both cases, with Lemko claiming its "Node1" product as the patent-practicing product marked with all 15 patents in both cases. *Compare* ECF No. 1, ¶¶ 42–43, *with* Ex. 1, ¶¶43–44.

## C.    The Accused Technology and Products in this Case Substantially Overlap with the Accused Technology and Products in the First-Filed Case.

Both complaints allege infringement by substantially overlapping technology and products—specifically, Microsoft's 5G mobile core software running on Azure Stack Edge servers in private 5G networks.[1]  *Compare* ECF No. 1 ¶¶ 50–56, *with* Ex. 1 ¶¶ 50–63.  In this case, Lemko alleges that Microsoft Azure Private 5G Core software meets nearly every claim limitation in all patents asserted against AT&T (*see* ECF No. 1 at ¶¶ 80–88, 90 ('230); 113–117 ('066), 140–150 ('322), 173–178 ('990), 201–210 ('667), 233–237 ('029), 260–268 ('020)).  Likewise, in the first-filed case, Lemko alleges that Microsoft's "Affirmed Mobile Core" software meets nearly every claim limitation in all patents asserted against Microsoft. Ex. 1 at ¶¶ 74–83 ('763), 107–118 ('414), 138–150 ('988), 170–187 ('409), 209–222 ('111), 243–254 ('980), 275–289 ('478), 310–323 ('931). Lemko's description of the accused technology in both cases is also substantially the same, as shown below:

---

[1]  Although Lemko's complaint mentions AT&T Private Mobile Connection in passing at paragraph 44, that product is never mentioned again and is not mapped to any of the patents as an infringing product.  ECF No. 1 at ¶ 44.

| Lemko's Description of Accused Products in This Case | Lemko's Description of Accused Products in the First-Filed Case |
|---|---|
| "AT&T Private 5G Edge employs **servers running [Microsoft's] Azure Private 5G Core software virtualized software**. The servers may be common-off-the-shelf servers (COTS), **including [Microsoft] Azure Stack Edge servers,** or other COTS servers. ECF No. 1 at ¶ 50. | "The Accused Products include at least the following products and services: **Affirmed Mobile Core; Affirmed Private Network Service ('APNS'); Azure Stack Edge ('ASE')**..." Ex. 1 at ¶ 50. "**Affirmed Mobile Core runs on ASE hardware...**" Ex. 1 at ¶ 63. |
| "As detailed on Microsoft's website, '**Azure Private 5G Core is an Azure cloud service for deploying and managing 5G core network functions** on an Azure Stack Edge device, as part of an on-premises private mobile network for enterprises." *Id.* | "Prior to Microsoft's acquisition of Affirmed Networks, **Affirmed marketed its mobile packet core (i.e. software for managing and controlling mobile networks)** …" *Id.* at ¶ 51.

"The Accused Products are used to provide **mobile network control and management functions on a decentralized network, VFN, or NFV,** … *Id.* at ¶ 46. |
| "**Azure Private 5G Core software** performs multiple functions, including mobility and handover management (**AMF: access and mobility function); session handling (SMF: session management function); … and data routing (UPF: user plane function).** *Id.* at ¶ 55. | "**Affirmed Networks' 5G Mobile Packet Core** product includes virtualized implementations of at least the following 5G network nodes and services: **AMF (Access and Mobility Function …, SMF (Session Management Function), UPF (User Plane Function** …These **virtualized functions are provided by software** …." *Id.* at ¶ 57. |
| "**Each Azure Private 5G Core … provides core network functions**, service management and visibility of the **private mobile network.**

The **network functions** include an instantiated single enterprise mobile network which is a complete set of **5G virtualized network functions.**" *Id.* at ¶ 53. | "**Affirmed Mobile Core is software that performs core network (4G/5G) functions.**" *Id.* at ¶ 63.

"APNS is a fully managed **private network solution** that enables mobile network operators and mobile service providers to quickly deliver **private LTE/5G network service to an enterprise**..." *Id.* at ¶ 59. |
| "Each site is a packet core instance, **an implementation of the 3GPP standards-defined 5G Next Generation Core** …." *Id.* at ¶ 54. | "Affirmed Mobile Core software follows the **standard-based open architecture in 3GPP projects to provide 3GPP compliant network functions**…" *Id.* at n. 4. |

Ex. 4 (Summary Table 7).

Lemko's limitation-by-limitation allegations also show that it is accusing the same 3GPP core network functions to meet the same claim limitations in both cases. Specifically, Lemko points to Microsoft's mobile core software as including at least the following 3GPP core network functions in both cases, for example: HSS (Home Subscriber Server) (Ex. 1 ¶ 56; ECF No. 1 ¶ 86), HLR (Home Location Register) (Ex. 1 ¶ 112; ECF No. 1 ¶ 86), VLR (Visitor Location Register) (Ex. 1 ¶ 112; ECF No. 1 ¶ 86), CLR (community location register) (Ex. 1 ¶ 116; ECF No. 1 ¶ 114), MSC (Mobile Switching Center) (Ex. 1 ¶ 178; ECF No. 1 ¶ 88), BSC (Base Station Controller) (Ex. 1 ¶ 78; ECF No. 1 ¶ 88), AAA (authentication, authorization, and accounting) (Ex. 1 ¶ 56; ECF No. 1 ¶ 88), AMF (Access and Mobility Function) (Ex. 1 ¶ 57; ECF No. 1 ¶ 88), IMSI (International Mobile Subscriber Identity) (Ex. 1 ¶ 248; ECF No. 1 ¶ 116), SMF (Session Management Function) (Ex. 1 ¶ 57; ECF No. 1 ¶ 88), and UPF (User Plane Function) (Ex. 1 ¶ 57; ECF No. 1 ¶ 88). *See also* Ex. 4, Table 8.

Thus, in both cases, the accused instrumentalities are Microsoft 5G mobile core software running on Microsoft Azure Stack Edge servers, which are alleged to infringe based on the same architecture (a distributed mobile architecture), the same software (5G mobile core), the same hardware (Azure Stack Edge), the same technical components (3GPP core network functions), and the same use case (private 5G networks).

### D. The Parties in this Case Substantially Overlap with the Parties in the First-Filed Case

Lemko is the plaintiff in both this case and the first-filed case. In the first-filed case, Lemko sued Microsoft and its wholly owned subsidiary, Affirmed Networks. In this case, Lemko sued AT&T based on AT&T's alleged use of Microsoft mobile core software deployed on Microsoft Azure Stack Edge servers. ECF No. 1 at ¶¶ 50–56.

### III.    LEGAL STANDARD

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). The rule "rests on principles of comity and sound judicial administration" and "[t]he concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* (citing *Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 951 (5th Cir. 1997); *see also W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985) (courts have long recognized the need to avoid interference with each other's affairs).

"The rule does not, however, require that cases be identical. The crucial inquiry is one of 'substantial overlap.'" *Save Power Ltd., supra,* 121 F.3d at 950. It applies when two actions involve "closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical." *Le-Vel Brands, LLC v. R&D Glob., LLC*, No. 4:20-cv-420-SDJ, 2021 WL 963738, at *4 (E.D. Tex. Mar. 15, 2021). The second-filed court must only determine whether there is a likelihood of substantial overlap between the two cases. *Id.* (citing *Cadle Co.*, 174 F.3d 599 at 606). If the court finds a likelihood of substantial overlap, "the court should transfer the case so that the first-filed court can determine how the two cases should proceed." *Id.* Courts determining substantial similarity have examined whether they involved "the same technology, the same inventors, overlapping remedies, the same witnesses, or overlapping issues in claim construction." *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:22-cv-00168-JRG, 2022 WL 17417972, at *1 (E.D. Tex. Dec. 5, 2022).

"Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." *Save Power Ltd., supra,* 121 F.3d at 951 (fact that defendant "is not a party to the Original Action does not undermine the appropriateness of transfer in view of all the facts of this case."); *see also Victaulic Co. v. Romar Supply, Inc.*, No. 3:13-CV-02760-K, 2013 WL 6027745, at *2 (N.D. Tex. Nov. 14, 2013) (granting transfer under the first-to-file rule where defendant was not present in the first-filed case). "'[S]o long as the issues in the two cases substantially overlap, as they do here,' transfer under the first-to-file rule is warranted." *Id.*

## IV.    ARGUMENT

### A.    Lemko's Suit in the Northern District of Texas is the First-Filed Case

There is no question the case Lemko filed in the Northern District of Texas is the first-filed case, and this case is the second-filed case. Lemko filed the NDTX case on February 14, 2022 (Case No. 3:22-cv-363-L-BT, ECF No. 1) and its Second Amended Complaint on September 6, 2024 (Ex. 1); and Lemko filed this case on March 17, 2025 (ECF No. 1). Therefore, the Northern District of Texas case is the first-filed case. *RPost Holdings, Inc. v. Yesware, Inc*., No. 2:13-cv-953-JRG, 2014 WL 12712410, at *2 (E.D. Tex. Sept. 4, 2014) ("This rule means precisely what it says: 'the first filed'").

### B.    There is Substantial Overlap Between This Case and the First-Filed Case.

#### 1.    There is substantial overlap in the asserted patents in both cases.

The overlap between the asserted patents in both cases is substantial.  Many are related and all are directed to aspects of Lemko's distributed mobile architecture, including numerous significant overlapping claim terms.  Ex. 4 (Summary Tables 1–6).  Courts routinely apply the first-to-file rule when the asserted patents in two actions are not identical but involve related patents covering the same subject matter with overlapping claim language. *See, e.g., AmberWave*

10

*Sys. Corp. v. Intel Corp.*, No. 2:05-CV-321, 2005 WL 2861476, at *2 (E.D. Tex. Nov. 1, 2005) (applying the rule where "patents address[ed] different scientific aspects, mechanical engineering and electrical engineering, of semiconductor transistors.") *Scorpcast, LLC v. MG Freesites, Ltd.*, 2021 WL 7286024, at *3 (W.D. Tex. June 21, 2021) (finding substantial overlap where "six of the eight patents at issue . . . share a priority claim . . . and the other two of the eight relate to the same subject matter").

This Court's decision in *Bosch* is directly on point. *Bosch, supra,* 2014 WL 12618095 at *1. There, this Court transferred a case under the first-to-file rule after the plaintiff had already filed suit in a different jurisdiction on asserted patents that "share[d] an inventor," related to the same subject matter, and "share[d] specification language, prior art references, drawings, and priority claims." *Id.* The same is true here: all fifteen patents in both cases share the same inventor (Shaowei Pan), relate to the same subject matter (Lemko's distributed mobile architecture), and share specification language, figures, claim terms, and prior art. Ex. 4, Tables 1–5. Four patents here are directly related to five in the first-filed suit with identical specifications and shared priority dates (Ex. 4, Table 2); and the other three ('667, '322, and '066) have substantially overlapping specifications, figures and claim terms (*id.* at Tables 3–5) (*compare* Ex. 6 ('414) *with* ECF No. 1-3 ('322). As in *Bosch*, "the patents are so closely related that the patentee had to file terminal disclaimers to overcome double-patenting rejections among the patents in the first and second cases"—Lemko terminally disclaimed three patents here over three in the first-filed case. Ex. 4, Table 3; Exs. 13-18. Lemko describes the allegedly inventive aspects of the invention identically in both cases. Ex. 4, Table 6; *compare* ECF No. 1 ¶¶ 21, 40 *with* Ex. 1 ¶¶ 12, 41. And Lemko relies on identical photos and allegations about its Node1 product allegedly practicing all 15 patents to purportedly satisfy marking requirements, further demonstrating the shared subject matter and

11

substantial overlap between the asserted patents in both cases. *See* ECF No. 1, ¶¶ 42–43, Ex. 1, ¶¶ 43–44.

The likelihood of conflicting or inconsistent claim constructions between sister courts is significant given the overwhelming overlap in claim terms.  Ex. 4, Table 4.  The fifteen patents in both cases here share numerous claim terms—including the "distributed mobile architecture" term, which appears in thirteen of the fifteen patents and which Lemko has represented is of "critical importance" to the scope of the claims—demonstrating substantial overlap in claim construction between these cases. *See* Ex. 4, Table 4. *See E-Z-EM, Inc. v. Mallinckrodt, Inc.*, 2010 WL 1378820, at *2 (E.D. Tex. Feb. 26, 2010) ("In light of the commonality of inventorship and technology, claim construction in all three cases will likely involve overlapping issues."); *see also DynaEnergetics Eur. GMBH v. Hunting Titan, Inc.*, 2020 WL 3259807, at *4 (W.D. Tex. June 16, 2020) (common elements in claim means "a potential for conflict exists if the claims are constructed [sic] differently," which weighs in favor of transfer).  Besides the "distributed mobile architecture" term, the "distributed mobile architecture gateway," "home location register," "visitor location register," "community location register," "mobile switching center," "base station controller," "authentication, authorization and accounting (AAA) module," and "legacy network" claim terms all appear in numerous asserted patents across both cases.  Ex. 4, Table 4.  Thus, the likelihood of competing, conflicting or inconsistent claim constructions is significant.

The very substantial overlap between asserted patents in both cases weighs strongly in favor of transfer under the first-to-file rule.  Transferring to NDTX, where Lemko first filed suit, "best serves the interests of judicial economy, avoids needless duplication, avoids rulings which may trench on Judge [Lindsay's] authority, and avoids the piecemeal resolution of issues between the parties." *Hydro-Quebec v. A123 Sys., Inc*., No. 3:11-cv-1217-B, 2012 WL 13026630, at *5

(N.D. Tex. Mar. 16, 2012). As this Court found in *Bosch*, "[t]hese similarities suggest that judicial economy and comity would be served by transferring this case" to the Northern District of Texas, where Lemko first chose to file a closely related suit. *Bosch, supra,* 2014 WL 12618095 at *1.

### 2.    There is substantial overlap in the accused products in both cases

The accused products and technology in both cases also substantially overlap, supporting transfer under the first-to-file rule. Lemko's core infringement claim in both cases is that Microsoft's mobile core software running on Azure Stack Edge servers in a private 5G network, implementing the same or similar 3GPP network functions, infringes Lemko's patents. ECF No. 1 at ¶¶ 50–56; Ex. 1 at ¶¶ 50–54; Ex. 4, Tables 7–8. The accused Azure Private 5G Core software in this case is based directly on the Affirmed mobile core software Lemko accused in the first-filed case. *See e.g.*, Ex. 1 at ¶¶ 51, 61 ("Microsoft advertised to its customers and the public that it combined Affirmed Network's software with Microsoft's Azure cloud and ASE servers in a fully integrated private mobile network service designed for mobile operator*s*…."); *see also id.* ¶¶ 54–55, 57. Lemko accuses many of the same 3GPP network functions allegedly implemented in Microsoft's mobile core software in both complaints, including HSS, HLR, VLR, CLR, MSC, BSC, AAA, AMF, IMSI, SMF, and UPF. *See* Ex. 4, Table 8.

Thus, as in *Bosch,* the accused functionality is "virtually identical." *Bosch, supra,* No. 2:13-CV-00349-JRG, ECF No. 15. Though there are additional accused products at issue in the first-filed case against Microsoft, the accused products need not be identical for the first to file rule to apply. *See SIPCO, LLC v. Emerson Elec. Co.*, 2016 WL 7743496, at *4 (E.D. Tex. July 1, 2016) ("[t]here may be additional features present in the accused products in one action that are not present in the other action, but that does not preclude a finding of substantial overlap when the general technology is the same."). Here, the accused products in both cases are based on the same technology, use-case, architecture, hardware, software, and accused instrumentalities. These facts

13

strongly favor transfer under the first-to-file rule.

### 3.    There is substantial overlap in the parties in both cases

There is also substantial overlap in the parties in both cases.  Lemko is the plaintiff in both cases, and the defendants substantially overlap because Lemko alleges AT&T and Microsoft are in privity regarding the accused products. *See Save Power Ltd.*, *supra,*121 F.3d at 952 (remanding with instructions to transfer where the defendants in first and second-filed cases were different but were in privity with respect to a licensing agreement at-issue in both cases).   Under the first-to-file rule, "[c]omplete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." *Id.* at 950–51.

This situation is analogous to *Victaulic, supra,* 2013 WL 6027745 at *2, where transfer was granted under the first-to-file rule despite different defendants named as accused infringers, because the plaintiff was the same and there was a manufacturer/customer relationship between the different defendants in the two cases.  In *Victaulic*, similar to Lemko's allegations here, the accused infringer in the first-filed case was the manufacturer of the accused product, and in the second-filed case was a distributor/customer. *Id.* The court rejected the argument that the first-to-file rule was inapplicable because the accused infringers were not identical: "so long as the issues in the two cases substantially overlap, as they do here, transfer under the first-to-file rule is warranted." *Id.*; *see also In re Taasera Licensing LLC, Pat. Litig*., No. 2:22-CV-00303-JRG, 2023 WL 2716548, at *3 (E.D. Tex. Mar. 29, 2023) (internal citation omitted) (granting transfer where defendants were not identical).  Given the overwhelming overlap in patents, parties and accused products, "[i]t would constitute an unnecessary interference by this Court into a sister court's affairs, as well as an unwise use of judicial resources," for both courts to proceed and issue potentially inconsistent rulings, warranting transfer under the first-to-file rule.

14

### 4.    There is substantial overlap in anticipated discovery in both cases

Given the overlapping subject matter, there is no question discovery and witnesses will substantially overlap in both cases, further warranting transfer under the first-to-file rule. *See Cameron Int'l Corp. v. Nitro Fluids LLC*, 2020 WL 3259809, at *3–4 (W.D. Tex. June 16, 2020) (noting the overlap in cases involving the same inventors and recognizing "that a large majority of the evidence and witnesses will be the same"), *vacated on other grounds*, *In re Nitro Fluids*, 978 F.3d 1308. Discovery on the core issues of claim construction, noninfringement, invalidity and damages will be virtually identical in both cases. Discovery from Lemko—including testimony and documents related to the fifteen overlapping patents, the inventor Shaowei Pan, and Lemko's Node1 product—will be duplicative in both cases. And given the overlap in patents, parties, accused products, and technology, the discovery and witnesses required from the defendants will necessarily be entirely or substantially the same.

## V.    CONCLUSION

Transfer under the first-to-file rule is strongly warranted here given substantial overlap in the core issues of claim construction, noninfringement and invalidity, arising from substantially overlapping patents, technology, accused products, parties, witnesses, and discovery. It is up to the Northern District of Texas court, Lemko's originally chosen venue, "to determine the proper course for all other disputes that substantially overlap with the first-filed suit." *Victaulic, supra,* 2013 WL 6027745 at *2. "Consistent with the principles of comity and conservation of judicial resources, this Court should not usurp the first-filed court's role." *Ramot, supra,* 2022 WL 17417972 at *1 (internal citation omitted).  For these reasons, AT&T respectfully requests that the Court transfer this case to the Northern District of Texas under the first-to-file rule.

Dated: June 27, 2025

Respectfully submitted,

*/s/ Kelly C. Hunsaker*

Kelly C. Hunsaker
California Bar No. 168307
khunsaker@winston.com
**WINSTON AND STRAWN LLP**
255 Shoreline Drive, Ste. 520
Redwood City, CA 94065
Tel: (650) 858-6500
Fax: (650) 858-6550

Krishnan Padmanabhan
(admitted *pro hac vice*)
kpadmanabhan@winston.com
**WINSTON AND STRAWN LLP**
200 Park Ave
New York, NY 10166
Tel: 212-294-6700
Fax: 212-294-4700

Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
**THE DACUS FIRM, PC**
821 ESE Loop 323 Suite 430
Tyler, TX 75701
Tel: 903-705-1117
Fax: 903-705-1117

**COUNSEL FOR DEFENDANTS
AT&T ENTERPRISES LLC, AT&T
MOBILITY LLC, AT&T MOBILITY II LLC,
AND AT&T SERVICES INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025, the foregoing document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kelly C. Hunsaker*
Kelly C. Hunsaker

## CERTIFICATE OF CONFERENCE

On June 27, 2025, counsel for movant conferred with opposing counsel concerning the relief sought in this Motion, and was advised that opposing counsel opposed this Motion. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Kelly C. Hunsaker*
Kelly C. Hunsaker
