# EXHIBIT 9

No. 2024-2336

# United States Court of Appeals for the Federal Circuit

LEMKO CORP.,
*Appellant*,

v.

MICROSOFT CORPORATION, AFFIRMED NETWORKS, INC.,
*Appellees.*

———————————————

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, in No. IPR2023-00531.

———————————————

**OPENING BRIEF FOR APPELLANT LEMKO CORP.**

———————————————

| | |
|---|---|
| Paul J. Andre | Aaron Frankel |
| Lisa Kobialka | Jeffrey Price |
| James Hannah | Jeffrey Eng |
| KRAMER LEVIN NAFTALIS | KRAMER LEVIN NAFTALIS |
|  & FRANKEL LLP |  & FRANKEL LLP |
| 333 Twin Dolphin Dr., Suite 700 | 1177 Avenue of the Americas |
| Redwood Shores, CA 94065 | New York, NY 10036 |
| Telephone: (650) 752-1700 | Telephone: (212) 715-9100 |

***ATTORNEYS FOR LEMKO CORP.***

Thus, after construing communications information, the Court should reverse the Board's FWD that the teachings of Flore anticipate the "communications information" element of the '988 Patent.

## III. THE FINAL WRITTEN DECISION SHOULD BE REMANDED BECAUSE THE BOARD FAILED TO CONSTRUE "DISTRIBUTED"

The Board committed legal error in failing to resolves the parties' dispute over the construction of "distributed." Therefore, to the extent the Court does not reverse the FWD based on its reliance on a misconstruction of "communications information," the FWD should be vacated and remanded for the Board to construe this important claim limitation.

### A. The Parties Had a Dispositive Dispute Over the Construction of "Distributed"

The parties, experts, and Board all agreed that the Challenged Claims require a ***distributed*** mobile architecture but disagreed as to the meaning of distributed in that context. Lemko requests that the Court vacate the FWD and remand the proceedings to the Board to resolve this dispositive claim construction issue.

The Board failed to resolve the parties' claim construction dispute over the plain meaning of the term "distributed." Appx13 (FWD) ("We need not assign further meaning to the term 'DMA' because determining that Patent Owner's construction is incorrect sufficiently decides the issues before us."). Lemko presented a host of intrinsic and extrinsic evidence supporting its contention that "[t]he term 'distributed

46

mobile architecture (DMA)' should be construed consistent with the plain meaning of its words and the inventor's description, which require ***a mobile architecture with distributed functionality and organization, instead of centralized functionality and hierarchal organization***." Appx293 (POR) (emphasis added).

The Board erred in declining to give a construction to DMA or, at least, to the "distributed" portion of the term. Without deciding what the important term actually requires, the Board could not find that Flore anticipated the Challenged Claims, and it is not possible for the Court to meaningfully review the soundness of the FWD.

Just as district courts must, "[w]hen the parties raise an actual dispute regarding the proper scope of . . . claims, . . . resolve that dispute," *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008), the Board also must resolve such disputes in the context of IPRs. *See CSR, PLC v. Skullcandy, Inc.*, 594 F. App'x 672, 678 (Fed. Cir. 2014) ("The Board erred by failing to construe 'threshold value' as it is used in claims 1-6 before finding that [a prior art reference] failed to disclose a 'threshold value'" in anticipation.). Indeed, without resolving the legal question of the scope of the Challenged Claims, it was impossible for the Board to have found substantial evidence to support anticipation. *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1374-75 (Fed. Cir. 2017) (the Board must construe the claims before determining whether they are infringed, obvious, or anticipated).

In addition to claim construction arguments directed to the meaning of the full "distributed mobile architecture" term, Lemko argued that the '988 Patent uses the term

47

"distributed" in accordance with its plain and ordinary meaning, which distinguishes communications networks that use network architectures with centralized organization and functionality from the claimed networks where routing functionality is distributed:

> The term "distributed mobile architecture (DMA)" should be construed consistent with the plain meaning of its words and the inventor's description, which **require a mobile architecture with distributed functionality and organization, instead of centralized functionality and hierarchal organization**.

Appx293 (POR) (emphasis added); *see also* Appx277 (POR); Appx289-292 (POR) (describing Flore's conventional, hierarchical networks); Appx293-296 (POR) (arguing that the '988 Patent uses the term "distributed" consistently with its plain and ordinary meaning). Again, and as reflected in the passage above, Lemko's position that "distributed" has a plain and ordinary meaning was not an assertion that it has no meaning and should be ignored. Instead, Lemko was clear that "distributed" requires that the mobile architecture have functionality that is distributed in contrast to a centralized and hierarchical mobile architecture, as is found in Flore.

Rather than address this argument or show how the art of record teaches a DMA under Lemko's proposed construction, Microsoft's Reply offered an alternative plain meaning of the term "distributed." Appx348 (Reply) (acknowledging that "the parties' dispute appears to focus on the term 'distributed'"). In contrast to Lemko's proposed construction which required distributed functionality and organization, Microsoft contended that "[t]he plain meaning of 'distributed' . . . is 'something that is part of a

48

broader network or intended to be part of a broader network.'" Appx349 (Reply) (citing Appx1969 at 13:22-14:10 (Ex. 2027) (Proctor Tr.)). Microsoft exclusively relied on its infirm proposed construction and did not attempt to show that Flore could anticipate the challenged claims under Lemko's proposed construction. *See* Appx388-390 (Sur-Reply) (observing that Microsoft presented no argument or evidence responding to Lemko's plain meaning claim construction argument). Thus, this dispute was dispositive on anticipation because Microsoft effectively conceded that Flore is not distributed under Lemko's construction.

The Board rightly did not adopt Microsoft's alternative plain meaning interpretation, which was untimely, unresponsive, vague, and inconsistent with Mr. Proctor's other statements and the balance of the intrinsic and extrinsic evidence. Appx9, Appx13-14 (FWD) (mentioning but not adopting Microsoft's interpretation). Although a Petitioner may **respond** to a claim construction argument made in a POR, and may offer arguments about how the prior art satisfies the construction, it may not introduce an entirely new "argument in reply that it could have presented earlier." *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1383 (Fed. Cir. 2023); *id.* at 1380 (quoting U.S. Patent Trial and Appeal Board, Consolidated Trial Practice Guide, at 73 (Nov. 2019)). Petitioner's construction was, therefore, untimely because it could have been presented earlier and did not respond or attempt to rebut Lemko's argument.

Thus, the Board found anticipation without deciding the construction of a disputed claim term and without adopting Microsoft's proposed construction, upon

49

which its anticipation ground depended. Instead, in response to all of the arguments and evidence directed to this issue, the Board (1) repeated Lemko's proposed construction (Appx8); (2) mentioned, without endorsing, Microsoft's proposed "plain meaning" of distributed (Appx9); and (3) determined that it "need not assign further meaning to the term 'DMA' because determining that Patent Owner's construction is incorrect sufficiently decides the issues before us" (Appx13) (FWD). The Board did not mention the experts' agreement that DMAs require distributed functionality, did not determine that Petitioner's construction was correct, and did not find that the term "distributed" has some other plain meaning to a POSITA. It just declined to resolve the dispute. Appx8-14 (FWD).

As discussed below, because the Board failed to construe "distributed," the FWD should be vacated and the case remanded for the Board to resolve the parties' dispositive claim construction dispute.

### B. Remand is Necessary to Resolve the Parties' Claim Construction Dispute

The Board's failure to construe "distributed" runs afoul of this Court's precedent for three independent reasons, necessitating vacatur and remand.

***First,*** given the importance of "distributed" to resolution of Microsoft's anticipation ground, the Board could not leave the term unconstrued. "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on

50

a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l*, 521 F.3d at 1361. Here, the Board left unresolved the parties' critical dispute over the scope of the Challenged Claims. In particular, the parties disagreed as to if Flore's conventional mobile architectures were the same as the claimed ***distributed*** mobile architecture.

Before and during trial, Lemko consistently argued that the plain meaning of the term "distributed" in the phrase DMA requires a mobile architecture with distributed organization and functionality. Appx276 (POR), Appx277-283 (POR) (conventional cellular networks depend on centralized organization and functionality), Appx283-289 (POR) (Lemko's DMA eliminated the need for centralized hubs), Appx291 (POR) ("The 3G and 4G networks that are connected in Flore both rely on the centralized and hierarchical network architecture described in § II.A, supra."), Appx293-296 (POR) (the plain meaning of distributed requires distributed functionality and organization), Appx304-306 (POR) (Flore's 3G and 4G networks rely on centralized hubs for call routing).

Lemko also consistently distinguished Flore's conventional, hierarchical, centralized mobile architecture on the basis that it was not a distributed mobile architecture. *See, e.g.*, Appx168 (POPR) ("There is nothing 'distributed' about the conventional, hierarchical networks disclosed in Flore, and Petitioners do not even attempt to explain what it is about the components of these networks that make them

51

part of a DMA network."); Appx304-310 (POR). Meanwhile, Microsoft articulated its own alleged plain meaning of the term to attempt to cover Flore. Appx349 (Reply).

The Board's failure to resolve the parties' arguments directed to the plain meaning of the term "distributed" before purporting to adopt an unexpressed plain meaning construction was in error. The Court should, therefore, vacate the FWD and remand to determine the proper construction of this claim term in the first instance. *O2 Micro Int'l*, 521 F.3d at 1362-63.

***Second,*** the Board erred because its undisclosed plain-meaning construction failed to incorporate the parties' ***agreement*** that DMAs require distributed functionality. Appx13 (FWD). In *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263 (Fed. Cir. 2021), this Court determined that the Board may not adopt a construction that diverges from a "part of the claim construction [that] was not in dispute." Both experts in this case agreed that DMAs require distributed functionality, and while Microsoft floated a different "plain meaning" interpretation of the term, it did not ***dispute*** Lemko's position (or its own expert's testimony) that at least some functionality must be distributed among the nodes of the mobile architecture. *See* Appx348-349 (Reply); Appx1969 at 14:11-15:4 (Proctor Tr.) (Microsoft's expert testimony that "distributed" refers to distributed functionality or information). Yet nothing in the Board's claim construction reflects, or offers any reason from departing from, this agreement the DMA must have distributed functionality.

52

In any case, neither party could have anticipated that the Board would adopt a "plain meaning" of this disputed term without telling the parties what that meaning was. Appx13-14 (FWD); *SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1351 (Fed. Cir. 2016) (the Board may not adopt a construction that the parties did not request and could not anticipate), *rev'd on other grounds*, *SAS Inst., Inc. v. Iancu*, 584 U.S. 357 (2018). Accordingly, the FWD so that the Board may determine in the first instance (1) whether the Challenged Claims require distributed functionality, (2) what functionality must be distributed, and (3) whether Flore teaches such distributed functionality.

**Third** and finally, the Board erred in determining that distributed mobile architecture encompasses network architectures having centralized, hierarchal organization. Appx18-19 (FWD); Appx26 (FWD) ("Nor does the claim preclude using 'centralized hubs for call routing' . . . ."). The apparent basis for this determination—the Board's finding that Figure 6 of the '988 Patent "shows DMA servers and DMA gateways communicating in a centralized, hierarchical relationship"—must be rejected because Microsoft never made this argument, and it is wrong.

The Board was not permitted to adopt this argument because Microsoft never argued that the '988 Patent's Figure 6 "shows DMA servers and DMA gateways communicating in a centralized, hierarchical relationship." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016) ("[T]he Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond.") (citation omitted); Appx18-19 (FWD). Because Microsoft never

53

made that argument, Lemko never had a chance to address it in this context. Accordingly, the FWD must be vacated at least because Lemko did not have any opportunity to address the Board's reasoning on this point.

And in any event, the Board fundamentally misunderstood Figure 6 when it concluded that it shows a centralized hub for routing calls. Appx18-19 (FWD). Specifically, the Board confused the hierarchical relationship between DMA networks and the DMA Gateways with the distributed structure of the DMA networks themselves. Figure 6, reproduced below, shows two separate DMA networks (620, 640). Within each of the DMA networks, calls are routed among DMA servers that form a DMA network **without** traversing any centralized hub (e.g., DMA Servers 622 and 624 can communicate directly with each other through DMA network 620), allowing mobile devices within the same DMA network, such as mobile devices 632 and 634 to call each other without traversing DMA Gateway 602. Appx1478, ¶ 62 (Cooklev Decl.) (citing Appx79 at 6:46-6:62 ('988 Patent)). DMA Gateway 602 is not, therefore, "centralized" in the same way as an MSC or SGSN because it is not a centralized hub for routing calls within a DMA network. Appx1478-1479, ¶¶ 63-64 (Cooklev Decl.). This is in contrast to traditional cellular networks and Flore, which require **all calls** to be routed through a centralized hub like an MSC or SGSN, a DMA network enables.

54



FIG. 6

Appx67, FIG. 6 ('988 Patent).

The Board focused on the hierarchical relationship between the DMA networks and the DMA Gateways. But rather than being a centralized hub for routing all calls, the DMA Gateways are only there to bridge separate networks and only route those calls which are destined for a device in a different network altogether. Appx81 at 10:24-26 ('988 Patent) ("As shown in FIG. 6, the groups of DMA servers communicating via the two private IP networks 620 and 640 are separate networks."); *id.* at 10:53-56 ("Embodiments of the present disclosure enable devices on separate networks to

55

communicate with each other via DMA gateways that bridge separate network and communications systems."). Thus, use of DMA Gateways to interconnect disjoined DMA networks is not a basis to conclude that DMA networks themselves need not be distributed.

For at least the foregoing reasons, the Board's determination that DMAs can have "centralized hubs for call routing" should be rejected because it was not based on any argument Microsoft made and because it misunderstands the intrinsic record. The Court should determine, therefore, that the plain meaning of "distributed" excludes mobile architectures that rely on centralized hubs for call routing.

\* \* \*

In finding the Challenged Claims anticipated by Flore, the Board determined that Flore's RNC and AGW are "distributed," but it never articulated what meaning of "distributed" it applied to reach the conclusion and it never resolved the parties' disputes the construction of this term. The Court should, therefore, vacate the FWD and remand so that the Board can evaluate Lemko's claim construction argument in the first instance.

## CONCLUSION

Lemko respectfully requests that the Court reverse the Board's Final Written Decision and find patentable Claims 1, 3-9, and 20 of the '988 Patent. In the alternative, Lemko respectfully requests that the Court vacate the Board's Final Written Decision and remand for further proceedings.

56

                                              Respectfully submitted,

Dated: January 29, 2025         By:  */s/ Aaron M. Frankel*

                                              Paul J. Andre
                                              Lisa Kobialka
                                              James Hannah
                                              KRAMER LEVIN NAFTALIS
                                                 & FRANKEL LLP
                                              333 Twin Dolphin Drive, Suite 700
                                              Redwood Shores, CA 94065
                                              Telephone: (650) 752-1700
                                              Facsimile: (650) 752-1800
                                              pandre@kramerlevin.com
                                              lkobialka@kramerlevin.com
                                              jhannah@kramerlevin.com

                                              Aaron M. Frankel
                                              Jeffrey Price
                                              Jeffrey Eng
                                              KRAMER LEVIN NAFTALIS
                                               & FRANKEL LLP
                                              1177 Avenue of the Americas
                                              New York, NY 10036
                                              Telephone: (212) 715-9100
                                              afrankel@kramerlevin.com
                                              jprice@kramerlevin.com
                                              jeng@kramerlevin.com

                                              *Attorneys for Appellant*
                                              Lemko Corp.