# EXHIBIT 10

No. 2024-2336

# United States Court of Appeals
# for the Federal Circuit

———————————

**LEMKO CORP.,**
*Appellant,*

v.

**MICROSOFT CORPORATION, AFFIRMED NETWORKS, INC.,**
*Appellees.*

———————————

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2023-00531

———————————

**APPELLEES' RESPONSE BRIEF**

———————————

April 9, 2025

Michael R. Rueckheim
WINSTON & STRAWN LLP
225 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500 (telephone)
MRueckheim@winston.com

*Counsel for Appellees*
*Microsoft Corporation and Affirmed Networks, Inc.*

Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned") (quotations omitted).

## V. Lemko's New Proposed Construction for "Distributed" Is Waived and Fails on the Merits

Lemko's next attempt to inject legal error with respect to the term "distributed" should be rejected. First, Lemko never proposed its lengthy claim construction proposal for "distributed" below and therefore the argument is waived. Second, Lemko is wrong to argue that the Board "fail[ed] to resolve[] the parties' dispute over the construction of 'distributed.'" Appx46.  To the contrary, the Board explicitly agreed with Microsoft's plain and ordinary meaning proposal and rejected Lemko's attempt to inject additional unsupported requirements into the term. Affirmance is warranted.

### A. Lemko's claim construction argument is improper for being newly raised for the first time on appeal and should be rejected.

Lemko's claim construction proposal for "distributed" was never raised below and is therefore waived.  *See CCS Fitness*, 288 F.3d at 1359.

Lemko argues that the "'988 Patent uses the term 'distributed' in accordance with its plain and ordinary meaning, which distinguishes communications networks that use network architectures with centralized organization and functionality from the claimed networks where routing functionality is distributed."  Br. at 47-48 (emphasis added).  But that is not what Lemko argued below.  Instead, Lemko only

49

argued that the longer phrase "***distributed mobile architecture*** (DMA)" should be construed to require multiple limitations:

> (1) a network architecture where DMA servers have distributed call-routing functionality and (2) are connected with other DMA servers through peer-to-peer connections (i.e. without connecting through a hierarchical, network-hub architecture), and (3) that is not a legacy communications network.

Appx8.  Lemko also took a shifting sands approach for this construction below, arguing in its POR that the plain meaning of the term "distributed mobile architecture" requires its proposed construction, but then "chang[ing] tack" in its Sur-Reply to argue that there is no plain and ordinary meaning for "distributed mobile architecture."  *See* Appx12. The identified terms for construction are different, and the proposed constructions are different.  It is improper for Lemko to present a new term for a construction at this stage.

Lemko's failure to propose this construction below is also shown by the fact that Lemko previously argued that its proposed requirement of distributed-call-functionality-and-avoiding-centralized-organization was due to connecting DMA servers via "peer-to-peer" connections—something that Lemko is no longer arguing as a requirement of the claims on appeal.  *See* Appx276 ("peer-to-peer" connections is what allows DMA servers to avoid use of "fixed backhaul connections" and "depend[ence] on centralized MSC or SGSN to route calls"); Appx301 ("What all of these legacy networks have in common is that they are not private peer-to-peer

networks, like the DMA networks of the '988 Patent."); Appx392 (arguing that the "peer-to-peer" part of its proposed construction for "distributed mobile architecture" "enable[s] the nodes of a DMA—the DMA servers—to switch and route calls instead of traversing a backhaul connection to a centralized switch"). Lemko, abandoned its unsupportable "peer-to-peer" connection interpretation on appeal. Moreover, the Board properly rejected that argument, for several reasons, including because the '988 patent explicitly states that some DMA servers do not participate as peers in an IP network. Appx11 (citing '988 patent (Appx81) at 9:12-13 ("in not all cases will the DMA servers 406 be able to participate as peers in an IP network")). This Court should not allow Lemko to maintain its distributed-call-functionality-and-avoiding-centralized-organization interpretation in the absence of Lemko pursuing a "peer-to-peer" connection requirement, and affirmance is warranted.

### B. Lemko's new claim construction proposal fails on the merits.

The Board correctly determined that the Flore prior art disclosed the claimed "distributed mobile architecture." Appx27. The Board provided a detailed opinion analyzing the arguments by both sides, evaluating the intrinsic evidence and weighing expert testimony. Appx1-50, Appx 24 ("Mr. Proctor persuasively show how each DMA recitation of claim 1 maps to a corresponding feature in Figure 1 of Flore … [w]e find Mr. Proctor's testimony credible."); Appx29 ("We credit Mr. Proctor's testimony explaining why a person having ordinary skill in the art would

have recognized that Flore's PDP context meets this recitation."), Appx20 ("Patent Owner cites Dr. Cooklev's declaration … [t]his unsupported testimony is unpersuasive.")  There is significant substantial evidence for the Board's decision and this Court should affirm.

Lemko's new "distributed" construction does not warrant a different result because the construction should be rejected.  First, the construction is nonsensical because it includes the term "distributed" in its definition of the claim term "distributed."  Namely, Lemko proposes that the "plain and ordinary meaning" of "*distributed*" "distinguishes communications networks that use network architectures with centralized organization and functionality from the claimed networks where routing functionality is *distributed*."  Br. at 47-48 (emphasis added). Using the term being construed as part of the proposed construction is a clear indication that the proponent is seeking to "import[] an extraneous adjectival modifier into the claim, which, in effect, impermissibly rewrites the patent's claims."  *See GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1317 (Fed. Cir. 2014).

Tellingly, Lemko identifies no support, for example a dictionary citation, for its "plain meaning" interpretation.  Lemko identifies definitions of "distributed computer network" and "distributed system," but the Board properly rejected these definitions as "unavailing because the claims do not recite a 'distributed computer

network,' 'decentralized system,' or 'distributed system.'"  Appx14, fn 3.[2]
Commonsense explains why Lemko did not identify dictionary support of
"distributed" for its definition of "distributed": a dictionary would never define the
word "distributed" with a definition that includes the word "distributed" as Lemko
proposes here.[3]

Moreover, the Board properly determined that the '988 patent does not define
the term "distributed" in terms of the centralized or decentralized communications
that is the focus of Lemko's new construction.  The Board observed that the
specification "refers to 'distributed and decentralized' separately, suggesting these
terms have different meanings."  Appx14, fn 3 (citing '988 patent (Appx79) at 6:63–
65 ("Within the distributed and associative telecommunications system 400 the

---

[2] Moreover, as explained by Microsoft's counsel during oral argument, it is not
"appropriate to rely upon these definitions because neither party has[, and] more
importantly probably, [neither party's] expert has relied upon these dictionary
definitions."  Appx456, 19:2-5.  Further, "the definitions don't really address –
they're a little bit attenuated in that they don't actually use the term at issue,
'distributed mobile architecture.'"  *Id.*, 19:6-8.  But regardless, the "definitions
support petitioner's view of what the plain and ordinary meaning of the term …
actually means."  Appx456, 19:8-10.

[3] Indeed, Lemko implicitly concedes that these new dictionary definitions do not
support its new construction of "distributed" by only discussing the dictionaries in
its background section discussion of the IPR history generally (*see* Br. at 28-29)
without providing any citation to the dictionaries in its argument section (*see* Br. at
34-56).

controlling logic *can* be distributed and decentralized." (emphasis added by the Board))). Lemko has provided no rebuttal to this Board finding.

The Board also found that there is no requirement that DMAs have distributed call routing functionality, as Lemko now urges. The Board noted that every example in the specification "uses only permissive language to refer to decentralization." Appx14, fn 3; *see also* Appx79, 6:52-53 ("***For example***, the DMA servers 406 *can* switch and route calls received via each antenna 404"), 6:63-65 ("the controlling logic *can* be distributed and decentralized"), Appx80, 7:4-9 ("user data stored in a database, e.g. a home locator resource (HLR) or a visitor locator resource (VLR) *can* be distributed equally") (emphasis added for each) *cited at* Appx353-354. The Board also noted that Lemko provided no explanation as to why distributed call routing functionality should be read into "every instance where 'DMA' is used as a prefix or qualifier for other terms." Appx10. The Board further found that "[t]here is no disclaimer or lexicography in the specification that" supports Lemko's attempt to rewrite the claims as such. Appx11. Indeed, the Board provided 13 pages of detailed analysis considering and rejecting Lemko's distributed-call-functionality-and-avoiding-centralized-organization interpretation. Appx7-20.

This Court should do the same, Lemko's new claim construction argument notwithstanding. Lemko's proposal fails because, as the Board found, the claims here do not exclude "centralized hubs for call routing." Appx26. Moreover, Lemko

has identified no "disclaimer or lexicography" supporting Lemko's interpretation and relies solely upon language discussing "non-limiting, exemplary embodiment[s]." Appx11.  Instead, Lemko, again, "merely cites several passages of the specification and asserts that the claim should read as it says … [w]ith no explanation as to why the specification should limit the claims."  Appx11.

Further, Lemko's proposed construction is not consistent with the specification.  As determined by the Board, the '988 patent discloses "DMA servers and DMA gateways communicating in a centralized, hierarchical relationship" (Appx18)—the opposite of Lemko's current distributed-call-functionality-and-avoiding-centralized-organization interpretation.  The Board cited the '988 patent's Fig. 6 (reproduced below) for this determination:



FIG. 6

Appx18-19 (citing '988 patent (Appx67) at Fig. 6). The Board explained that Lemko's patent envisions "DMA servers [that] communicate with DMA gateways, which are hierarchically positioned above the DMA servers." Appx19. As such, the DMA Gateways act as a centralized hub for the communications.

Lemko's reliance on *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364 (Fed. Cir. 2016) in an attempt to avoid the Board's Figure 6 focused determination is misplaced. Br. at 53 (citing Appx18-19, Appx26). Lemko argues that Microsoft allegedly "never made this argument" (*id.*) but ignores that Lemko itself focused on the '988 patent's Figure 6. *See, e.g.,* Appx359-361. *Magnum Oil* does not preclude the Board from properly doing its "job, as adjudicator, of drawing its own inferences and conclusions from those arguments." *See Rovalma, S.A. v. Bohler–Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1027 (Fed. Cir. 2017).

Furthermore, Lemko cannot rely on *Magnum Oil* because Microsoft devoted an entire section of its briefing to explain how "[t]he specification expressly contradicts Lemko's construction" by disclosing an organization, like that depicted in the '988 patent's Figure 6, where DMA servers communicate with and through DMA gateways instead of the peer-to-peer connections. Appx355-357. That is exactly what the Board determined that the '988 patent's Figure 6 depicts: "DMA servers and DMA gateways communicating in a centralized, hierarchical

56

relationship" (Appx18-19) instead of peer-to-peer connections between each of the
DMAs.

Lemko is also wrong to argue that "the Board fundamentally misunderstood
Figure 6 when it concluded that it shows a centralized hub for routing calls."  Br. at
54.  First, this argument requires a fact-based analysis as to how a POSITA would
view Figure 6; the Board performed that analysis and this Court defers to the Board's
fact findings.  *See Andersen Consulting v. United States*, 959 F.2d 929, 932 (Fed.
Cir. 1992) ("We ... defer to [the Board's] finding of fact unless unsupported by
substantial evidence.").  Moreover, Lemko is wrong. For example, Lemko argues
that the '988 patent's Figure 6 depicts "DMA Servers 622 and 624 [that] can
communicate directly with each other through DMA network 620" and therefore
"DMA Gateway 602 is not, therefore, 'centralized' in the same way as an MSC or
SGSN because it is not a centralized hub for routing calls within a DMA network."
Br. at 54.  But Lemko ignores that DME Gateway 602, in the '988 patent's Figure 6,
is at least centralized with respect to any calls placed between mobile devices 632-
636 with devices 652-658 which are indisputably not capable of communicating via
peer-to-peer connections.  Indeed, Lemko relies solely upon an irrelevant citation to
its expert declaration for this argument—a section of the declaration that (i) doesn't
address Figure 6 and (ii) regardless, only opines that use of a "peer-to-peer
connection" is what allows avoidance of "a centralized switching device, like an

MSC or SGSN." Br. at 54 (citing Appx1478-1479, ¶¶ 63-64). Lemko has abandoned its prior argument that DMA servers require "peer-to-peer" connections and therefore has no valid argument against the Board's finding that the '988 patent's Figure 6 discloses a "centralized hub for routing calls."

Lemko is also wrong in arguing that the Board "never articulated what meaning of 'distributed' it applied" and "never resolved the parties' disputes the construction of this term." Br. at 56. The Board did exactly that. For example, Microsoft identified, with supporting expert testimony, that (i) "the plain meaning of 'distributed'" means "something that is part of a broader network or intended to be part of a broader network" and (ii) "DMA should be accorded its plain meaning" because "no special definition or disclaimer dictates a different result." Appx9. The Board "agree[d] with [Microsoft] that DMA 'should be accorded … its plain and ordinary meaning *of each of its individual terms*" (i.e., including the "distributed" term). Appx13-14 (emphasis added). The Board also explicitly considered and rejected Lemko's attempt to construe the DMA term to require "'*call routing* functionality' to be distributed." Appx13 (emphasis in original). The Board has already firmly decided these issues based upon a detailed review of the arguments and evidence.

Moreover, Lemko has no valid basis to argue that Microsoft's "distributed" interpretation was "untimely, unresponsive, vague, and inconsistent" with the

intrinsic and extrinsic evidence.  First, Lemko never presented this "untimely" argument below and therefore that argument is waived.  Second, *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374 (Fed. Cir. 2023) does not support Lemko's argument—because here the institution decision and final written decision both construed the DMA term in accordance with its plain and ordinary meaning and rejected Lemko's multiple attempts to inject extraneous limitations into the term.

Lemko is also wrong to argue that the Board's interpretation "failed to incorporate the parties' **agreement** that DMAs require distributed functionality."  Br. at 52 (emphasis in original).  The Board explicitly determined after reviewing the expert deposition transcript that the "primary testimony [Lemko] relies on from [the expert] is his assertion that 'distributed' means that '[t]here needs to be functionality distributed'" … "it does not follow that the claim requires '*call routing* functionality' to be distributed," as Lemko urges.  The Board also determined that even if the expert testimony "somehow implies that call routing functionality must be distributed … this would contradict the permissive, non-limiting language of the specification" and the testimony therefore couldn't properly be used to construe the claim otherwise.  Appx13 (citing *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001) for position that "expert testimony that contradict[s] the intrinsic evidence" cannot be used to interpret claims).

The Board agreed with Microsoft that the DMA claim term should be afforded its plain and ordinary meaning "*of each of its individual terms*" (i.e., including the "distributed" term). Appx13-14. And the Board rejected Lemko's numerous attempts to import limitations into the claim. Appx7-20. Indeed, it is hard to fault the Board's analysis—regardless of the merits—considering that Lemko presented entirely different arguments for the "distributed mobile architecture" in its POR and Sur-Reply. *See* Appx12 (Lemko's "[s]ur-reply changes tack, arguing that DMA has no plain and ordinary meaning in the art, so we should construe it "only as broadly as provided for by the patent itself," but Lemko "*itself* asserts in the Response that DMA should be construed 'consistent with the *plain meaning of its words* and the inventor's description.'"). The Board caught Lemko arguing out of both sides of its mouth and affirmance is warranted.

## CONCLUSION

For all these reasons, Microsoft respectfully requests the Court affirm the Board's determination that challenged claims are anticipated by Flore. Alternatively, should the Court determine that there is support for Lemko's newly urged claim construction proposals, Microsoft requests that the Board remand to the Board for further briefing as to Lemko's new proposed constructions and Flore's disclosure.

Dated: April 9, 2025

Respectfully submitted,

*/s/ Michael Rueckheim*
Michael R. Rueckheim
WINSTON & STRAWN LLP
225 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500 (telephone)
MRueckheim@winston.com

Counsel for Appellees
Microsoft Corporation and Affirmed
Networks, Inc.